United States Courts
Southern District of Texas
FILED

APR 22 2016

David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

IN RE SEARCH WARRANT § Case No. H 16-409M
EXECUTED ON §
March 22, 2016 at §
§
§
8303 Thora Lane, Hangar #M31 §
Spring, Texas 77379 §

REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION TO
UNSEAL SEARCH WARRANT AFFIDAVIT AND OTHER RELIEF

TO THE HONORABLE COURT:

COMES NOW, Justin Smith ("SMITH"), through undersigned counsel, and respectfully submits the following in Reply to the Government's April 20, 2016 Response in Opposition to Motion to Unseal Search Warrant Affidavit and Other Relief, which SMITH filed on April 12, 2016 (in H 16-409M) and April 15, 2016 (in H 16-555 and H 16-556).[1]

SMITH respectfully requests that this Court GRANT SMITH's three Motions to Unseal the Search Warrant Affidavits because unsealing the affidavits will not jeopardize an ongoing investigation. Furthermore, although the United States has returned some of the electronically stored data it has not returned all of the computers and devices, nor has it returned certain documents, binders and files that are necessary for SMITH's businesses to function. The United States also has company check books with unused checks. SMITH's companies need these unused checks to continue to conduct business; they have outstanding liabilities that need to be paid with these checks.

---

[1] The Government's Response addresses all three of SMITH's Motions.

# ARGUMENT

## A. UNSEALING THE AFFIDAVIT WILL NOT JEOPARDIZE AN ONGOING CRIMINAL INVESTIGATION.

This Court should grant SMITH's motions to unseal the search warrant affidavits because unsealing the affidavits will not jeopardize an ongoing investigation. SMITH is clearly aware there is an ongoing investigation.

The Court should reject the Government's mere, unsupported assertion that unsealing the affidavits would impede its ongoing criminal investigation. (*See* Gov't's Resp. of 04/20/16, 3.) As discussed in SMITH's Motion, the courts of appeals have held that the subject of a search warrant has the right, pre-indictment, to examine the search warrant affidavit. *E.g.*, *United States v. Oliver*, 208 F.3d 211, 2000 WL 263954 (4th Cir. Mar. 9, 2000). This right may be overcome if the government demonstrates a compelling governmental interest requiring the affidavit to be kept under seal and if there are no less restrictive means, such as redaction, available. *In re Search of 14416 Coral Gables Way, N. Potomac, Md.*, 946 F. Supp. 2d 414, 419 (D. Md. 2011). When the government merely makes an unsupported assertion that the "compelling interest" is an "ongoing investigation" the courts have found that the search subject's right to conduct his or her ongoing legitimate business outweighs the assertion of a compelling government interest. *See In re Search Warrants for 14 Straight St., S.W., 439 Ionia, S.W. & 2026 Chicago Drive*, 117 F.R.D. 591, 596 (W.D. Mich. 1987) (mere contention that releasing copies of documents could impede investigation, without further explanation, meant that "the scales must tip in favor of the [business] owners").

In *United States v. Peterson*, 627 F. Supp. 2d 1359 (M.D. Ga. 2008), the court, recognizing that the search warrant and affidavit the subject of the search sought to unseal were judicial records, found instructive the case law "mak[ing] it abundantly clear that judicial

documents ... should only remain[] sealed when some interest would be adversely affected if the documents were made public." *Id.* at 1373-74. In *Peterson*, the government did not articulate any interest that would be adversely affected by unsealing the search warrant and affidavit; the court reasoned that unsealing the documents would not impede an ongoing investigation in any event because government agents had already searched the areas listed in the search warrant. Because the government failed to articulate a sufficient reason to keep the search warrant and affidavit under seal, it granted the motion to unseal. *Id.* at 1374. *See In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 894-95 (S.D. Tex. 2008) (stating that "It is difficult to conceive any circumstance under which permanent sealing of the entire file, including the order itself, could ever be justified," and emphasizing that "We are judges of courts, not of chambers, and justice may not be done in a corner").

Moreover, the Government does not even address the possibility that SMITH could gain access to the affidavits in a redacted form. The Government comments, for instance, that certain witnesses' names should not be revealed to SMITH, who might obstruct justice[2] were he to know of those witnesses. Granting SMITH access to a redacted affidavit would balance SMITH's and the Government's competing interests. "Redaction is among the less restrictive alternatives that must be considered." *Id.* at 894. "Legitimate confidentiality interests will almost always be fully accommodated by redacting the troublesome words or passages." *Id.* at 895. *See In re Search of 14416 Coral Gables Way*, 946 F. Supp. 2d 414 (ordering government to produce redacted affidavit). The Government failed to address its burden to respond to this Court and

---

[2] Despite requests from Ms. Arnett and Mr. Minns, Mr. Martin has refused to point to any evidence the Government supposedly has that SMITH has engaged in any activity remotely obstructive of justice, except that allegedly he is on videotape destroying evidence. The Government has elected not to share this videotape. In any event, the Government has not even suggested how this alleged act could have been prevented by sealed records.

show why the redacted portions of the affidavits should remain confidential. *See In re Search Warrant*, 5 F. Supp. 3d 18, 21 (D.D.C. 2013) (court ordered government to file redacted affidavit and supplemental brief explaining why those portions of the affidavit it refused to disclose should remain secret).

The Government is concerned about "return information" being included in the search warrant affidavit. SMITH is assuming the Government is referencing SMITH's "return information" since he is the presumed target. If the Government is concerned that the information would be made public SMITH is not advocating for that. He doesn't want his return information to be made public. There are many ways to keep the "return information" confidential. One way is to redact the search warrant affidavits. Another way is to provide the information to SMITH's defense counsel along with a protective order that the information remain confidential and under seal, or other conditions be placed on the disclosure of items such as (1) an order that defense counsel only make such copies as are necessary to evaluate the legality of the search, (2) an order that defense counsel keep a written record, subject to production upon additional order by the Court, concerning how many copies were made, to whom those copies were delivered, and the date of the delivery, or (3) an order that defense counsel review the information with SMITH but not allow SMITH to retain copies of the documents or that no person other than defense counsel make copies of the unredacted versions of the search warrant affidavits. But first the Government needs to show a compelling reason for any restrictions against SMITH from SMITH's own personal or corporate returns.

The Government's argument that the affidavits should remain sealed is not supported by its reference to 26 U.S.C. § 6103. Although "[s]ection 6103 reflects the strong public interest in safeguarding the confidentiality of tax return information," *United States v. Tillman*, No. 07

CR.1209 (LTS), 2009 WL 976818, at *2 (S.D.N.Y. Apr. 6, 2009), the courts "assign[s] considerable weight to the public interest in access to these judicial documents," *id.*, 2009 WL 976818, at *3. More to the point, the Government cannot simply reference § 6103's goal of protecting tax return information and use that reference to keep under seal the search warrant affidavits—which are not tax returns or tax return information. As the *Tillman* court put it:

> The Court must balance that considerable weight in favor of access against any countervailing considerations ... The government asserts as a countervailing consideration Section 6103's overarching emphasis on ensuring the confidentiality of tax return information (subject to limited, specific exceptions). The Court agrees that Section 6103 prioritizes the confidentiality of tax return information. The Court is not, however, contemplating public access to the tax return information itself. Rather, the issue at hand is public access to the Government's application for disclosure of tax return information and the Court's order authorizing such disclosure, neither of which implicates the privacy concerns attendant to tax return information. Accordingly, the asserted countervailing consideration does not outweigh the considerable public interest in access to these judicial documents.

*Id.*, 2009 WL 976818, at *3 (ordering information to be unsealed). And, the argument that SMITH's return information should be protected from SMITH himself is preposterous.

The Government is also concerned that should the affidavits be unsealed, SMITH will have a better chance to hinder the investigation of the IRS. The Government confuses the Constitutional rights to counsel and due process, for a citizen to prepare for a Government's enormous personal attack (three warrants in four weeks in the beginning of an investigation) with obstruction. The Government has seized all records SMITH has. Assuming there were a threat of SMITH destroying or concealing evidence, a claim SMITH denies, there is nothing left to conceal or destroy. As noted, although Mr. Minns has requested information regarding the allegation that SMITH has concealed or destroyed evidence, no information has been provided. This allegation, if true, could create a conflict for this Firm depending on the timing of the

conduct. This was discussed with Government counsel who promised to "get back" to SMITH's counsel, but has not done so.

The Government seems to be concerned that SMITH will learn the identity of witnesses. Again this is something that is easily remedied by redacting the affidavits.

The Government makes much of the Seventh Circuit case of *In re EyeCare Physicians of America*, 100 F.3d 514 (7th Cir. 1996), citing the Fifth Circuit case of *In re Grand Jury Proceedings*, 115 F.3d 1240 (5th Cir. 1997). (Gov't's Resp., 3-5.) But *In re Grand Jury Proceedings* is distinguishable because there the appellees failed to avail themselves of the pre-indictment remedy provided by Rule 41, *id.* at 1247, as SMITH has done here. Moreover, at least one district court in the Fifth Circuit has expressly addressed the issue whether the *In re Grand Jury Proceedings* court really endorsed *In re EyeCare Physicians* as pointedly as the Government asserts. In *Al-Dahir v. Northrop Grumman Info. Tech.*, No. CIV.A. 08-563, 2008 WL 4470514 (E.D. La. Sept. 26, 2008), the court thought that it was "unclear whether the Fifth Circuit's reference to *EyeCare Physicians* was meant to adopt the reasoning in that case as dispositive of the issue presently before this Court"—that is, whether access to a sealed affidavit should be allowed—"or was merely a determination that in light of an extant appellate decision finding that there was no Constitutional right to sealed warrant affidavits, the government's actions were reasonable and thus did not evidence "callous disregard" of movant's Constitutional rights" *id.*, 2008 WL 4470514, at *5 n.4. The *Al-Dahir* court then stated that although it was "mindful of the Circuit's characterization of *EyeCare Physicians* and [wa]s greatly guided by it," the Fifth Circuit's reference to *EyeCare Physicians* in *In Re Grand Jury Proceedings* as "sensible" was not a reference to the same issue or holding presented, i.e., whether to unseal a search warrant affidavit, "nor did the Circuit engage in much analysis of that decision or the

issue presented here." *Id.* at *5. Therefore, the court decided to "engage[] in its own process of analysis." *Id.*

Likewise, this Court should engage in its own analysis, rejecting the Government's request to keep the affidavits under seal when it has provided no compelling reason to do so.

B. **SMITH IS ENTITLED TO ACCESS TO AND COPIES OF SEIZED DOCUMENTS.**

The Government seized documents that are vital to SMITH's businesses ability to function. SMITH needs trip logs, flight logs, company binders, contact information, unused checks, aircraft title documents, employee payroll files, insurance records, asset documentation, among other vital documents. These items are necessary to prepare and file tax returns and for the business to function properly. SMITH requests copies of these essential items. Not all of this information will be stored electronically. The Government has seized 83 boxes of documents. SMITH does not know which box these items are in. Some of the items might be on the electronically stored devices, but they might not. The Government's assertions that it has already returned computers seized during the execution of Search Warrant No. 1 and it will return the computers seized during execution of Search Warrant No. 2 and Search Warrant No. 3 (Gov't's Resp., 5) should be rejected because the latter electronic devices have not yet been returned. Further, the Court should make short shrift of the assertion that it need not provide SMITH with copies of physical documents because the computers "will likely have copies of most of the paper documents that were also seized" and the paper documents "are likely duplicated on" computers. (*Id.* at 5, 6.) The IRS is not likely to accept that explanation when the time comes, after the extension, for filing corporate and personal returns.

First, when the Government returned the first set of computers, the Quickbooks program was corrupted and broken along with the trip log system. The trip log system took weeks to get

repaired and working again. The Government's declaration that it has returned or will return electronically stored information thereby obviating any need SMITH might have to physical documents must be viewed with some reservation.

Second, even if it could be assumed, *arguendo*, that there is some duplication between the computer files and paper documents, the assertion that all or even most of the paper documents are on the computers is completely unfounded. More importantly, such an assumption of the likelihood of duplication ignores SMITH's fundamental right to access his property and copy it if he deems it necessary for his ongoing business operations.

The courts impose on the Government a duty to furnish subjects of investigation such as the present investigation with copies of important records so as to prevent major hardship during the time preceding the indictment. *Premises Known as 225, 1468 & 1470 Statler Towers, 197 Delaware Ave., Buffalo, N.Y. v. United States*, 787 F.2d 796, 798 (2d Cir. 1986) (government ordered to allow business to inspect and make copies of documents where it moved prior to indictment for return of property seized under warrant). *See Consumers Credit Insurance Agency, Inc. v. United States*, 599 F.2d 770 (6th Cir. 1979) (upholding ruling that although government could keep copies, originals were to be returned to the petitioners because the great volume of documents held by government could impede operation of their business). *See also United States v. Korbe*, No. 02:09-CR-0005, 2010 WL 2490690 (W.D. Pa. June 16, 2010) (observing that plain language of Rule 41(g) authorizes court to impose reasonable conditions to protect property owner's access to seized property and noting that government has the burden of showing a legitimate reason to retain the seized property).

In *In re Search Warrants for 14 Straight St., S.W., 439 Ionia, S.W. & 2026 Chicago Drive*, the business owners claimed, as SMITH claims here, "that the effect of the seizures has

been to close down a legitimate business[3], interfere with their ability to meet their tax obligations and interfere with their payroll responsibilities, not to mention interfere with their ability to defend themselves during the course of a criminal investigation." 117 F.R.D. at 594. The court concluded "it may be taken as established for purposes of these motions that the seizures of the documents did in fact close down an ongoing business enterprise employing individuals at several locations, interfered with payroll obligations of that business enterprise, [and] may have interfered with compliance with tax obligations." *Id.* at 595. It further predicted that seizure and retention of the documents without allowing access would "interfere with any attempt of the owners to defend themselves during the course of this investigation." *Id.* Noting that the court had the authority to "consider and adopt such reasonable measures as will prevent unnecessary intrusion upon the property owners without interfering with the legitimate purposes of the government's investigation," *id.* at 594, the court soundly rejected the government's claim that the businesses could not access their own documents "to make duplicates for themselves (an act, incidentally they obviously would have had the legal right to perform had the documents remained in their possession)," *id.* And, rejecting the government's argument that the request for access to the businesses' own documents was like a discovery dispute, in which the government should not have to comply if it was unduly burdensome to provide documents, the court said:

> The owners seek access, not discovery. They already know what the government has, even if they may not have memorized it, since the government took it directly from them. The court's warrants which grant the government a right to obtain these documents does not, of itself, automatically extinguish the access previously enjoyed by their legitimate owners. Where contraband is not involved, the government's seizure entitles it to *temporarily hold* the property, *but not to the exclusion of the owner if this will cause the latter unnecessary hardship.* To cast this dispute in terms of a discovery issue simply ignores the reality of the situation, and allows the government to use its shield as a sword.

---

[3] The Government does not contend SMITH's business is not legitimate. The claim a difference with him regarding Federal taxes, a difference which is currently being litigated in DC.

*Id.* at 595 (emphasis added). The court continued:

> While the search warrants gave the government authority to seize evidence in aid of its investigation, the warrant did not give carte blanche authority to the government to close down the owners' business until its legality could be affirmatively established at some indefinite date in the future. As the government points out, the legality of the business enterprise has yet to be determined. Absent that determination, it not the court's intent, by issuing the warrants, to penalize the businesses. Any intrusions on the businesses caused by the warrants should be the unavoidable secondary effects of the government's legitimate investigative procedures. It is the court's implicit duty to ameliorate those intrusions where possible. Absent some countervailing consideration, the owners are entitled to have access to their records for business purposes and in preparation of their defense.

*Id.* at 596 (ordering that business owners could obtain copies of all documents and that copying would be under the government's supervision).

So as to prevent further intrusion into and disruption of SMITH's legitimate business affairs, the Court should grant SMITH access to all documents and the right to duplicate such documents as are necessary for him to further conduct the business of his companies.

## C. THE GOVERNMENT HAS ATTORNEY-CLIENT PRIVILEGED INFORMATION. USE OF ITS OWN "TAINT TEAM" TO DETERMINE PRIVILEGE MUST NOT BE ALLOWED.

As stated in the Motion to Unseal the Search Warrant, the Government has seized SMITH's cell phone. Text messages and emails sent to and received by attorneys for SMITH are stored on this cell phone. The Government knows the identity of SMITH's attorneys in this case (Ashley Arnett and Michael Minns), and in the pending civil case with the FAA (Chris Gilbert and Gregory Winton). The Government knows it has attorney-client privileged information. In the Inventory for Search Warrant No. 1 the Government listed another attorney, Patrick Murphy, and references emails with murphylawtx.com. The inventory for Search Warrant No. 3 references a box with "legal suit" documents. Without having access SMITH's

defense counsel cannot identify particular pages that are covered by the attorney-client privilege. These are clearly communications between SMITH and his attorney as the Government has noted in the inventory. *See Apex Mun. Fund v. N-Grp. Sec.*, 841 F. Supp. 1423 (S.D. Tex. 1993) (information in preliminary drafts of documents and communications made between an attorney and his or her client during process of drafting public offering process are privileged).

The Government has established a "taint" team to review the documents seized to determine what documents are subject to attorney-client privilege. SMITH objects to the use of the Government's own taint team. "[T]he use of government taint teams has often been questioned or outright rejected by the courts, at least in the context of criminal prosecutions." *In re Search of the Scranton Hous. Auth.*, 436 F. Supp. 2d 714, 722 (M.D. Pa. 2006) (citing *Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955 (3d Cir. 1984); *In re the Seizure of All Funds on Deposit in Accounts in the Names of National Electronics, Inc., at JP Morgan Chase Bank*, No. No. M-18-65(HB), 2005 WL 2174052 (S.D.N.Y. Sep. 6, 2005); *United States v. Stewart*, No. 02 CR. 396 JGK, 2002 WL 1300059 (S.D.N.Y. Jun. 11, 2002); *United States v. Neill*, 952 F. Supp. 834 (D.D.C. 1997); *United States v. Abbell*, 914 F. Supp. 519 (S.D. Fla. 1995); *In re Search Warrant for Law Offices*, 153 F.R.D. 55 (S.D.N.Y. 1994)), *vacated on other grounds sub nom. In re Search of Scranton Hous. Auth.*, 487 F. Supp. 2d 530 (M.D. Pa. 2007). The better approach has been for courts to appoint a special master to review seized documents, with costs charged to the government. In *In re Grand Jury Subpoenas*, 454 F.3d 511, 524 (6th Cir. 2006), for instance, the court of appeals ordered the district court to employ a special master to segregate potentially privileged documents. Reversing the district court's order allowing the government to use its taint team procedure, the court reasoned:

> [A] government taint team's review of documents is far riskier to the [subject] party's privilege than is a judge's *in camera* review.

> The government prefers a taint team procedure, whereby its lawyers, behind a protective screen or "Chinese wall," would sift the documents for privilege. The government argues that grand jury secrecy requires this procedure, that the appellants' alternative would present an inexcusable intrusion into the grand jury investigative process, and that appellants' alternative would likely be ineffective because appellants' attorneys would have an incentive to drag their feet.
>
> ...
>
> Furthermore, taint teams present inevitable, and reasonably foreseeable, risks to privilege, for they have been implicated in the past in leaks of confidential information to prosecutors. That is to say, the government taint team may have an interest in preserving privilege, but it also possesses a conflicting interest in pursuing the investigation, and, human nature being what it is, occasionally some taint-team attorneys will make mistakes or violate their ethical obligations. It is thus logical to suppose that taint teams pose a serious risk to holders of privilege, and this supposition is substantiated by past experience.

*Id.* at 520, 523 (citing *United States v. Noriega*, 764 F. Supp. 1480 (S.D. Fla. 1991), as example of when government taint team missed a document protected by attorney-client privilege and turned over tapes of attorney-client conversations to members of investigating team).

The Government references SMITH's citation to *Heebe v. United States*, No. CIV.A. 10-3452, 2011 WL 2610946 (E.D. La. July 1, 2011). (*See* Gov't's Resp., 8.) But the Government tries to distinguish *Heebe* on the wrong grounds. Although the taint team procedure used in *Heebe* was even more prejudicial to the asserted privileges than a taint team that does not include members of the prosecution team, concerns similar to those articulated by the judge in *Heebe* are present here. Importantly, the *Heebe* court reasoned that the plaintiffs' irreparable injury was caused in part by their not having any access to their documents, or even copies of their documents, until after an evidentiary hearing. *Id.* at *7.

As in *Heebe* and the other cases cited by SMITH herein and in his Motion, allowing the Government to review the documents it has seized, whether by the prosecution team or a taint team, does not ensure that SMITH's privileges are protected.

For all of these reasons, the Court should reject the Government's proposal that its own taint team is appropriate for determining what of the seized information is privileged.

### D. MISSING DOCUMENTS AND GOVERNMENT CONTACT WITH SMITH

Defense counsel Minns, after the first raid, asked AUSA Martin to let him know what documents the Government's team believed were not seized and SMITH's defense team would turn them over, assuming they were not legally protected, in which case they would be identified so that a Court could determine if they should be turned over or if the claimed privilege was valid. SMITH will still turn over any documents the Government thinks are missing, assuming there are any and assuming he has access to them, and assuming there is no valid privilege. But SMITH has to be made aware of what documents the Government contends are missing, if any.

On the date of Search Warrant No. 1, March 22, 2016, the following day, March 23, 2016, and the dates of the second and third search warrants, April 13, 2016, Minns also told Special Agent Cory L'Heureux that SMITH was represented by counsel. On or about March 31, 2016 L'Heureux contacted SMITH's mother telling her he has been trying to meet up with him, knowing SMITH is represented by counsel. (*See* Attached Exhibit A.) Again, on April 13, 2016, when Search Warrants No. 2 and Search Warrant No. 3 were being executed, L'Heureux again tried to talk to SMITH without counsel being present. This seems to be an effort to ignore SMITH's Fifth and Sixth Amendment rights.

### E. THE AGGRESSIVENESS OF THE GOVERNMENT AND THE QUESTIONS STILL UNDISCLOSED

The Government knew of the pending effort to obtain judicial review, but ignored that, until ordered by this Court to respond.

The unanswered, critical question that the sealed affidavits will hopefully reveal is whether or not the Government made full disclosure to the second magistrate judge it approached rather than waiting for this Court to rule. Do the affidavits disclose the disagreement with the target, the pending motion (telephone conferences had occurred before the filing of the motion), the existence of another executed warrant, and the allegation of attorney-client privilege concerns?

An *ex parte* effort before a federal tribunal does not allow the Government the same unchecked access it might have to grand jury. The Government, as well as the defense, owes a duty of candor to the bench.

## **CONCLUSION**

For the foregoing reasons, as well as the reasons set forth in SMITH's three Motions to Unseal Search Warrant Affidavit and Return Property, for Protective Order, and to Prevent Disclosure of Documents Protected under the Work Product Doctrine and Attorney-Client Privilege, SMITH requests a postponement of further discovery until after SMITH has reviewed the search warrant affidavits and documents to determine the applicability of privileges.

SMITH further requests that the Court:

UNSEAL the three search warrant affidavits so that SMITH and his attorneys may determine the scope of the warrant, the legality of the search, and the truth and veracity of the affidavit in accordance with *Franks v. Delaware*, 438 U.S. 154 (1978);

ORDER that certain documents and items seized be subject to a Protective Order;

ORDER that the Government provide SMITH with copies of all seized documents and

return to SMITH all documents subject to the attorney-client privilege and work product doctrines; and

GRANT such other and further relief to which SMITH shows himself entitled.

Dated: April 22, 2016

Respectfully submitted,

MICHAEL LOUIS MINNS, P.L.C. d/b/a
MINNS & ARNETT

*Ashley Blair Arnett*
Michael Louis Minns
State Bar No. 14184300
Ashley Blair Arnett
State Bar No. 24064833
9119 S. Gessner, Suite 1
Houston, Texas 77074
Telephone: (713) 777-0772
Telecopy: (713) 777-0453

## CERTIFICATE OF SERVICE

This is to certify that on this the 22nd day of April 2016, a true and correct copy of the above and foregoing instrument was served upon AUSA Martin via fax (713) 718-3300 and email: justin.r.martin@usdoj.gov.

*Ashley Blair Arnett*
Ashley Blair Arnett

# EXHIBIT A



Begin forwarded message:

From: Rebecca Iles <riles@mtaskdatasolutions.com<mailto:riles@mtaskdatasolutions.com>>
Date: March 31, 2016 at 1:41:40 PM CDT
To: "Justin Smith (jsmith@asiaviation.com<mailto:jsmith@asiaviation.com>)" <jsmith@asiaviation.com<mailto:jsmith@asiaviation.com>>
Subject: IRS CI called today

Son,

Wanted you to know, IRS Criminal Investigations called and needs to speak with you, but are wanting me to meet them in the near future in Jasper. His Name is Cory J. L'Heureux located in the Houston Field Office at 8701 Gessner, Suite 1010 Zip 77074, and his Desk phone # is 281-721-8356 and cell is 281-995-0535

I have no information that would benefit his investigation, but his interest lay with the Accounting End/Excise Taxes for ACMS & ASI and Payment of. Of course I have no information on those matters so that is what I let him know. I have an email address for him, but he called on an Unknown #/No Caller ID Line. Fyi. He said he has been trying to reach you for a while now.

Let me know if you need anything. Love you, Moms

MTask Data Solutions

Becky Iles
PO Box 5
Pineland, TX 75968-0005
riles@mtaskdatasolutions.com<mailto:riles@mtaskdatasolutions.com>

MTasking & Working for You!

Mobile: (936)208-2503
Direct: (409)584-1331
[logo8296871_md]