**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE SEARCH WARRANT** | § | **CR ACTION No. 4:16-MJ-409** |
| **EXECUTED ON** | § | |
| **March 22, 2016 at** | § | **Consolidated with:** |
| **8303 Thora Lane, Hangar #M31** | § | **CR ACTION No. 4:16-MJ-555 and** |
| **Spring, Texas 77379** | § | **CR ACTION No. 4:16-MJ-556** |
| | | |
| **IN RE SEARCH WARRANT** | § | |
| **EXECUTED ON** | § | |
| **April 13, 2016 at** | § | |
| **194 West Breezy Way** | § | |
| **The Woodlands, Texas 77380** | § | |
| | | |
| **IN RE SEARCH WARRANT** | § | |
| **EXECUTED ON** | § | |
| **April 12, 2016 at** | § | |
| **Unit C, Uncle Bob's Self-Storage** | § | |
| **4455 Panther Creek Pines,** | § | |
| **The Woodlands, Texas 77381** | § | |

**RESPONSE TO GOVERNMENT'S APPEAL OF MEMORANDUM AND ORDER AND
MEMORANDUM, RECOMMENDATION, AND ORDER**

TO THE HONORABLE COURT:

COMES NOW, Justin Smith ("Smith"), through undersigned counsel, and submits this opposition to the Government's July 29, 2016 Appeal of Memorandum and Order and Memorandum, Recommendation, and Order ("Gov't's Appeal"). Smith respectfully requests that the Court DENY the Government's Appeal. The July 15, 2016[1] Memorandum and Order ("MO") should stand as it was well reasoned, was based on application of a valid standard of

---

[1] The MO, which is designated Document 26 and was signed and filed on July 15, 2016, is the same order referred to by the Government in its Appeal, mistakenly, as the "July 18 Order." (Gov't's Appeal, 1.)

analysis that comports with Fifth Circuit law, and resulted in a fair outcome that balanced the interests of both parties as well as the public.  The Court should affirm and adopt the MO.[2]

## FACTS

On March 22, 2016, armed Internal Revenue Service ("IRS") agents raided Smith's business and seized documents, computers, and hard drives, pursuant to a search warrant ("SW No. 1") issued by the Honorable Magistrate Judge Dena Palermo of this District.  Contained within Attachment B to SW No. 1 was authorization to seize cell phones of Smith and Stephanie Rodriquez.  The search warrant affidavit, presumably justifying the warrant, was sealed.  Smith's cell phone contains attorney-client privileged information and was seized later pursuant to execution of one of two additional search warrants.

On April 12, 2016, Smith filed a Motion to Unseal the affidavit supporting SW No. 1 and for other relief.  Smith's counsel had been in immediate and regular communication with Assistant United States Attorney Justin Martin ("AUSA Martin"), had asked whether or not the Government would oppose relief, and recorded the Government's position on the certificate of conference attached to Smith's Motion.  On the same day, in a different court of this District, before Magistrate Judge Frances Stacy, the Government requested two more search warrants ("SW No. 2" and "SW No. 3").  The Government requested these warrants with full knowledge that Smith would be filing the Motion to Unseal SW No. 1 Affidavit, and with full knowledge of Smith's attorney-client privilege concerns.  Smith's attorneys had also expressed to AUSA Martin their concerns that the Government had already violated attorney-client privilege by seizing items known to be privileged.  Circumstances now inform both parties that privileged

---

[2] As will be discussed in Section I below, the Court should reject the Government's assertion that "[Magistrate Judge Palermo] used the wrong standard to balance the interests of disclosure versus non-disclosure."  (Gov't's Appeal, 2.)  The Government is wrong on this point.

documents were seized.

It is uncertain to this day whether Magistrate Judge Stacy was notified of the pending dispute at the time that she was asked to authorize two more warrants, or even if she was notified about the preceding warrant.[3]

On April 13, 2016, the Government executed SW No. 2 and SW No. 3, on Smith's residence and his storage unit, respectively.

On April 15, 2016, Smith filed motions to unseal the search warrant affidavits for SW No. 2 and SW No. 3 and to consolidate the three motions into one proceeding.  The Motion to Consolidate was granted on April 20, 2016.  A "taint team" was established to review the seized documents and items for privilege.  Had Smith not immediately notified the Government of his intention to file his first motion, and filed it, no taint team would have been set up, and the Government's prosecution team would have had months to review attorney-client privileged documents they knew, or should have known, were improperly seized.

On May 20, 2016, Magistrate Judge Palermo issued a Memorandum, Recommendation and Order ("MRO") directing the Government to file, under seal, for the Court's *ex parte*, *in camera* review, redacted versions of all three search warrant affidavits along with a brief justifying their proposed redactions no later than May 27, 2016 (Doc. 15).  Rather than comply, the Government's response was to file on May 26, 2016 a Motion to Stay, arguing that it was entitled to a stay of the MRO on the grounds that it would "be filing objections" at some unspecified time in the future (Doc. 16).

On June 1, 2016, Magistrate Judge Palermo denied the Government's Motion to Stay and again ordered the Government to file under seal, *ex parte*, the redacted affidavits and

---

[3] It is also unclear whether AUSA Martin informed Magistrate Judge Palermo, at the time of requesting SW No. 1, that the two additional warrant requests would be forthcoming.

supplemental brief "without further delay" (Doc. 18). The Government then filed a Motion for Reconsideration[4] and requested an extension of time to file the redacted affidavits (Doc. 19).

On June 6, 2016, Magistrate Judge Palermo again denied the Government's attempt to evade the MRO and gave the Government until June 10, 2016 to file under seal redacted affidavits and supplemental briefing (Doc. 21).

On June 9, 2016, the Government finally filed *ex parte*, under seal, their redacted versions of the search warrant affidavits and supplemental briefing.  Smith does not have access to either the supplement briefing or the Government's redacted version of the search warrant affidavits.

Magistrate Judge Palermo, after reviewing the redactions and briefing, found that the Government had redacted too much (Doc. 26).  In the MO of July 15, 2016, Magistrate Judge Palermo rejected the Government's arguments that keeping the affidavits sealed was necessary to prevent disclosure of return information and to avoid interference with an ongoing investigation. (*Id.* at 8, 10.)  The Government's request for broad redactions of confidential information and names of witnesses was further rejected as "excessive"; some redactions were suitable, however, to protect some confidentiality in some instances.  Magistrate Judge Palermo scrutinized the affidavits and decided that it was "appropriate to redact specific details, such as personal initials, dates invoice amounts, and certain narratives, that would readily identify witnesses and confidential sources of information."  (*Id.* at 11.)

On June 29, 2016, the Government appealed the MO and MRO (Doc. 27).

---

[4] In the Motion for Reconsideration, the Government argued that if it were required to redact the affidavits to hide all of the information that it wanted not to reveal, all that would be left would be "boilerplate" information that would be "useless" to Smith (Doc. 19, 10).  It is not possible to address this argument, as even the "boilerplate" in the affidavits have not been turned over to Smith.  Magistrate Judge Palermo, however, disagreed.  In any event, it is not the Government's prerogative to determine "usefulness" and the Government's trash may be Smith's treasure.

**ARGUMENT**

I.   **THE COMMON LAW RIGHT OF ACCESS SUPPORTS UNSEALING THE AFFIDAVITS.**[5]

As Magistrate Judge Palermo stated in the MRO, the Fifth Circuit Court of Appeals has not yet reached the issue of denying or permitting public access to warrant materials during a pre-indictment investigation.   (Doc. 15, 40.)   Yet, the Government has taken issue with Magistrate Judge Palermo's reasoned determination that, in accordance with the Fourth Circuit's conclusion in *Baltimore Sun v. Goetz*, 886 F.2d 60 (4th Cir. 1989), "the public has a qualified common law right of access to affidavits supporting search warrants when a pre-indictment investigation is underway." (Doc. 15, 4.)   Smith argued that he a had common law right of access.  Magistrate Judge Palermo decided on the best standard—one that requires analysis of each case on its facts; that the Government wishes a different standard applied, which "bright-line" standard would allow it to keep the three affidavits sealed indefinitely, is no argument for attacking the well-chosen standard.   Moreover, there are several problems with the Government's argument.

First, the Government's assertion that the *Baltimore Sun* court used the First-Amendment-right-of-access standard, not the common-law-right-of-access standard (Gov't's Appeal, 17) is wrong.  The *Baltimore Sun* court did not apply the First Amendment access standard, and in fact expressly held there was no First Amendment right of access: "Although the press and public *do not* have a first amendment right of access, they have a *qualified common law right of access*."   *Id.*, 886 F.2d at 62 (emphasis added).  In support of its argument that the

---

[5] Acknowledging that this issue of the First Amendment's application to provide a right of access to the affidavits in this case was not raised by Smith or Magistrate Judge Palermo (Gov't's Appeal, 7), the Government nonetheless wastes the Court's time and the taxpayers' resources by arguing a non-issue.  Smith will not address this argument, unless this Court advises counsel that it is now in play.

*Baltimore Sun* court applied the wrong standard, the Government points out that that court cited *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984), and *In re Washington Post Co.*, 807 F.2d 383 (4th Cir. 1986), which addressed the First Amendment right of access.  (*See* Gov't's Appeal, 17.)   But the *Baltimore Sun* court cited those cases to describe the procedures the judicial officer is obligated to follow when determining the extent of access.  *See id.*, 886 F.2d at 65-66.  Magistrate Judge Palermo unfailingly complied with these procedures in the MRO.

Second, Magistrate Judge Palermo in the MRO properly adopted the reasoning of the *Baltimore Sun* court that the determination whether the public should be given access to warrant papers should be left to *the judicial officer's sound discretion* to make on a *case-by-case* basis.[6] (Doc. 15, 5-7.)   The *Baltimore Sun* court explained:

> [U]nder the common law the decision to grant or deny access is "left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case."  *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 599, 98 S. Ct. 1306, 1312, 55 L.Ed.2d 570 (1978).
>
> …
>
> [I]n accordance with the principles explained in *Nixon*, 435 U.S. at 599, 98 S. Ct. at 1312, *the common law qualified right of access to the warrant papers is committed to the sound discretion of the judicial officer who issued the warrant*. Taking into consideration, as *Nixon* requires, all of the relevant facts and circumstances, the officer may file all or some of the papers under seal for a stated time or until further order.  Or, as frequently is done, he may conclude that the circumstances do not justify secrecy.  The judicial officer's decision to seal, or to grant access, is subject to review under an abuse of discretion standard.

---

[6] The Government's point that the *Baltimore Sun* court did not order the warrant materials to be unsealed (Gov't's Appeal, 11) actually supports Smith's argument that Magistrate Judge Palermo got it right.  Applying a case-by-case, fact-sensitive approach rather than a bright-line standard is reasonable and comports with Fifth Circuit precedent.

*Id.* at 64, 65 (footnotes omitted & emphasis added).  Magistrate Judge Palermo concluded that *Baltimore Sun* is most consistent with Supreme Court and Fifth Circuit law.[7]  (Doc. 15, 7 (citing *Nixon*, *Howard Johnson Co. v. Hotel Employees*, 417 U.S. 249 (1974), and *SEC v. Van Waeyenberghe*, 990 F.2d 845 (5th Cir. 1993).)

"*Baltimore Sun*'s fact-sensitive approach is consistent with the qualified nature of the right of access and the accretive common-law process from which it derives."  (Doc. 15, 6.)  Other courts have applied the common law to conclude that the target of a search warrant has a pre-indictment right to access the search warrant affidavit.  *See, e.g.*, *United States v. All Funds on Deposit at Wells Fargo Bank in San Francisco, California, in Account No. 7986104185, Held in the Name of Account Servs. Inc., & All Prop. Traceable Thereto*, 643 F. Supp. 2d 577, 583 (S.D.N.Y. 2009) (holding that search warrant affidavits fall within the definition of "judicial documents" such that public has common law right of access to them); *In re Four Search Warrants*, 945 F. Supp. 1563, 1567 (N.D. Ga. 1996) (finding that common law right to inspect and copy judicial documents applied to the sealed search warrant affidavits); *Matter of Searches of Semtex Industrial Corp.*, 876 F. Supp. 426, 429 (E.D.N.Y. 1995) (concluding that the common law right of access required that disclosure of search warrant affidavit and could not be indefinitely postponed, and ordering all warrant documents unsealed (but for confidential informant information) by a date certain if no indictment issued).

The Government urges that instead of the fact-sensitive approach used by the Fourth Circuit the Court should apply "the bright-line rule adopted by the Ninth Circuit" in *Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1989).  (Gov't Appeal, 9.)  Essentially the Government argues that considering each case of a sealed affidavit on its merits is bad law;

---

[7] The Government has repeatedly argued for the bright-line rule adopted by the Ninth Circuit and Magistrate Judge Palermo rejected it twice (Doc. 15, 7; Doc. 21).

rather, each case should be treated the same, and as if it were a case involving terrorism or other violence.  The categorical approach precludes case-by-case development of the right of access and excludes an entire category of judicial documents from public access based on an abstract assessment of interests viewed in the aggregate (Doc. 15, 7).  And, the Ninth Circuit's bright-line rule does not comport with U.S. Supreme Court precedent, because it does not account for the factors set out in *Howard Johnson Co. v. Hotel Employees*, 417 U.S. 249 (1974), and *Nixon*. *Baltimore Sun's* framework accounts for those factors, and thereby also promotes the Fifth Circuit's admonition that courts exercise their discretion to seal judicial records "charily," *Van Waeyenberghe*, 990 F.2d at 848 (quoting *Fed. Sav. & Loan Ins. Corp. v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987)).  Magistrate Judge Palermo found a common law right of access and that compelled application of a balancing test analysis.

Furthermore, the Supreme Court has held that warrants are intended, in part, to inform the target of the reasons of the government's invasion of his or her privacy.  *Michigan v. Taylor*, 436 U.S. 499, 508 (1978).  The Government's approach would frustrate this purpose by denying the accused access to the probable cause affidavits.  Smith has a right under Federal Rule of Criminal Procedure 41 to make a determination if he wants to challenge the issuance of the warrant and/or file a motion for return of property.  Part of that determination requires access to the search warrant affidavit.  Under both the *Baltimore Sun* and the Rule 41 approach, the accused's right of access is not absolute, however.  A search warrant may remain sealed if the Government can show a compelling interest.

Finally, the Government's argument that the Ninth Circuit's approach would save limited governmental resources (Gov't's Appeal, 10) not only challenges all notions of individual justice, it is inherently contradictory.  The Government supports its argument with a plethora of

cases in which individual reviews were given, and the government was required to release little if anything (*id.* at 19-21). That proves that resources are being used on the issues, and that the government largely wins when required to provide a compelling reason to keep affidavits secret.

The Government has referenced Federal Rule of Criminal Procedure 16's post-indictment discovery process as the appropriate means to go about gaining access to the search warrant affidavits (Gov't's Appeal, l0). This suggested post-indictment remedy of discovery followed by a Motion to Suppress is meaningless and misplaced, if not absurd. Smith is not simply trying to conduct post-indictment discovery prior to indictment. The Government, in suggesting Smith wait until an indictment is issued, at some unknown time, ignores Smith's Fourth Amendment rights, Fifth Amendment rights, and common law rights. Because the Government has decided to target Smith does not mean that Smith forgoes his rights. The Fourth Amendment right to inspect is derived from the government's decision to intrude. While the government has a right to exercise the powerful tool of search warrants, the person against whom the search warrants are exercised has at least the right to discover the basis for the exercise of power, with or without an indictment. In typical IRS investigations, indictments may not issue for several years. Smith may not be required to forgo his constitutional and other rights, for years, because of the Government's exercise of power. Challenges to the lawfulness of a search warrant may take the form of not only post-indictment motions to suppress, but also pre-indictment motions to return property, or a civil rights action.

> The affidavit must be seen to be effectively challenged. A person whose property is seized pursuant to a search warrant, cannot decide whether he/she should make a motion under Rule 41 unless they know the basis upon which the search warrant was issued. To permit an affidavit or any documents in support of a search warrant to remain sealed against examination by the person whose property was searched deprives him of the right secured by Rule 41 to challenge that search. There is nothing in Rule 41 to suggest that such evidence is intended to be taken

in secret or without a full opportunity for the aggrieved person to argue that probable cause was lacking.

*In re Up North Plastics, Inc.*, 940 F. Supp. 229, 233 (D. Minn. 1996).

Without unsealing the search warrant affidavits Smith is denied his due process rights to test the validity of the warrant.  Denial of access to a warrant affidavit effectively precludes a business organization such as Smith's from the most effective form of challenging the warrant, depriving it of due process under the Fifth Amendment.  "[M]inimum due process requirements are violated when a government agency permits its officers to carry out a seizure … without providing the owners a meaningful opportunity to challenge the seizure at the earliest possible time."  *Lee v. Raab*, 576 F. Supp. 1267, 1274 (S.D. Ohio 1983).

The Government essentially shut down Smith's business.  It seized legal records being utilized for Smith's civil defense in Federal Aviation Administration ("FAA") proceedings. Some of these same records the FAA attempted to subpoena in October 2014.  A few examples are flight manifest logs, trip logs, lease agreements, payroll records, and aircraft maintenance records, among an extensive list of other items.  The FAA was denied access to the documents. The FAA, through the IRS, now has access to these records.[8]  Other business records the Government seized include a book of unsigned checks.[9]

Applying Magistrate Judge Palermo's well-reasoned, fact-sensitive standard, would actually preclude violent criminals from accessing affidavits pre-indictment, contrary to the

---

[8] Smith's civil lawyers believe that this criminal action was begun in order to obtain discovery in the civil case that was not otherwise available to them, and not for a legitimate criminal tax investigation.

[9] After SA L'Heureux denied the book of checks was seized, the checks were finally returned after Smith filed motions, the parties engaged in "negotiations," and the parties reviewed the seized documents for attorney-client privileged information.  The Government conceded it had no need for the checkbook, let alone unissued checks, and that copying a single check was sufficient for its purposes.

Government's alarmist assertion. *See* Gov't's Appeal, 12 ("[T]he erroneous precedent that the MRO has set applies to every case and every member of the public [such that] drug traffickers and other violent criminals will be able to file similar motions to unseal.").). Magistrate Judge Palermo in the MRO and MO used a balancing test that protects the Government's interests here and would protect it in other cases.   The courts must counter-balance the government's arguments that unsealing portions of search warrant affidavits will interfere with an ongoing investigation or reveal too much information.   The case-by-case approach balances the interests of unindicted citizen who is presumed innocent and has Fourth Amendment rights; the interests of the public in monitoring governmental and judicial conduct; and the prosecution's interest in openness and in being able to reassure the public of its progress in the investigation and the prosecutions, as well as its interest in conducting an investigation with an appropriate level of confidentiality.   Magistrate Judge Palermo stated in the MRO that to overcome the qualified common law right of access to the search warrant affidavits, the Government must show that keeping the affidavits sealed is "essential to preserve higher values and is narrowly tailored to serve that interest" (Doc. 15, 8 (citing *Baltimore Sun*, 886 F.2d at 65-66)).   It is beyond debate that Magistrate Judge Palermo has exercised caution and patience in accommodating the Government's concerns.

Armed search warrant raids against peaceful, non-violent, white collar suspects should not be concealed from the public.   This modern policy of hiding even "boilerplate" information from the public violates all notions of "public justice."   If the government has determined that it should treat a tax investigation with the same level of militaristic concern as a terrorism investigation, the public should be apprised of this new approach.   The government's insistence, in either type of case, that once it has secured a warrant, the judicial branch must abstain from

any further intervention or oversight regardless of the individual facts, is troubling.  There is a reason why the executive branch must obtain consent and judgment from the judicial branch. There is a reason for the Magistrate Judge to have continuing jurisdiction over her own warrant.

## II.    THE AFFIDAVITS SHOULD BE UNSEALED PURSUANT TO THE FOURTH AMENDMENT AND RULE 41.

The Fourth Amendment to the United States Constitution states that "no warrants, shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. CONST. amend. IV.   In *In Re Search Warrants Issued August 29, 1994*, 889 F. Supp. 296 (S.D. Ohio 1995), the district court held that the Fourth Amendment right to be free from unreasonable searches and seizures includes the right to examine the search warrant affidavit once the search has been executed and a return filed pursuant to Fed. R. Crim. P. 41.[10] This right may be denied only when the government demonstrates that a compelling government interest requires that the affidavit remain under seal, and that less restrictive alternatives to sealing are not practicable.  *Id.* at 299-

---

[10] Rule 41 provides, in pertinent part:

> **(g) Motion to Return Property.** A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.
>
> …
>
> **(i) Forwarding Papers to the Clerk.** The magistrate judge to whom the warrant is returned must attach to the warrant a copy of the return, of the inventory, and of all other related papers and must deliver them to the clerk in the district where the property was seized.

Fed. R. Crim. P. 41(g), (*i*).

300.  Other courts have similarly concluded that the Fourth Amendment grants the target of a search warrant the right to access the affidavit, and that absent the government's showing of a compelling government interest in keeping the affidavit sealed, the target must be given access. *See United States v. Oliver*, 208 F.3d 211, 2000 WL 263954, at *2 (4th Cir. Mar. 9, 2000) (unpublished) (stating, "[A] defendant is entitled under the Fourth Amendment to examine the affidavit that supports a warrant after the search has been conducted."); *In re Search of 14416 Coral Gables Way, N. Potomac, Md.*, 946 F. Supp. 2d 414 (D. Md. 2011) (granting in part and denying in part motion to access search warrant affidavit where government did not show compelling government interest to keep entire affidavit sealed so as to override target's Fourth Amendment right to access); *In re Search Warrants Issued on Apr. 26, 2004*, 353 F. Supp. 2d 584 (D. Md. 2004) (denying government's appeal and affirming magistrate judge's order that property owner had the right under Fourth Amendment to examine search warrant affidavit after search was executed and prior to indictment, absent demonstration by government of compelling governmental interests in keeping affidavit sealed); *In re Search of 8420 Ocean Gateway Easton, Md.*, 353 F.Supp.2d 577, 579 (D. Md. 2004) ("The Court finds that there is a Fourth Amendment constitutional right to examine the search warrant affidavit."), *aff'd*, 353 F. Supp. 2d 584 (D. Md. 2004) ; *In re Search Warrant for 2934 Anderson Morris Rd., Niles, Ohio 44406*, 48 F. Supp. 2d 1082, 1083 (N.D. Ohio 1999) (in general a person whose property was seized pursuant to search warrant has Fourth Amendment right to inspect and copy affidavit); *Up North Plastics, Inc.*, 940 F. Supp. at 232 ("This court concludes that a person whose property has been seized pursuant to a search warrant has a right under the warrant clause of the Fourth Amendment to inspect and copy the affidavit upon which the warrant was issued.").

One of these cases, *Search Warrants Issued on Apr. 26, 2004*, parallels this case; there, the government made the argument that unsealing a search warrant affidavit, even with redactions, would be insufficient to protect the privacy interests of confidential witnesses and the integrity of the government's ongoing investigation, and would likely compromise on ongoing investigation.  353 F. Supp. 2d at 585-86.  The government in *Search Warrant Issued on Apr. 26, 2004* relied on the Seventh Circuit's case of *In re EyeCare Physicians of America*, 100 F.3d 514 (7th Cir. 1996), for their arguments to the magistrate judge and to the district court judge on appeal; the district court denied the government's appeal of the magistrate's order, however, and ordered the government to produce the redacted search warrant affidavits pursuant to the magistrate's order.  *Id.* at 592.  Like Magistrate Judge Palermo in the instant case, the magistrate judge in *Search Warrant Issued on Apr. 26, 2004* ordered the affidavit unsealed but for specific redactions after carefully weighing the competing interests of both parties.  The district court in *Search Warrant Issued on Apr. 26, 2004* applied a balancing test after finding that there is a Fourth Amendment right of access to search warrant materials and recognizing that several other courts have reached the same conclusion.  *Id.* at 587-88 (citing *Search Warrants Issued Aug. 29, 1991*; *Up N. Plastics*; *Semtex Indus.*).  "More precisely, these courts held that the Fourth Amendment confers an independent pre-indictment right of access to search warrant materials on the search subject whose property is searched."  *Id.* at 588.  As in *Search Warrant Issued on Apr. 26, 2004*, the Government here has failed to show that the Magistrate Judge's redactions are clearly erroneous.  *See id.*

The Fourth Amendment's requirement of probable cause is meaningless without some way for targets of a search to challenge the lawfulness of that search.  *Up North Plastics*, 940 F. Supp. at 232-33.  The power invested in the government with a search warrant is substantial, one

of the most powerful documents that a court can authorize.  Doors can be broken down.  Armed squads can be released on citizens to forcibly retrieve that which the warrant allows to be seized.  People in the vicinity of the search can be restrained for the protection of the invading officers.  During the armed search of a business, the business is virtually shut down; subsequently, having been raided, its reputation is often ruined.  Indeed, after the seizure the business may not be able to reopen without legal action to obtain seized materials, documents, and/or items like computers or checkbooks.  Without any legal precedent, it seems it is becoming common practice to hide search warrant affidavits from public view by sealing.  *See* David Horan, *Breaking the Seal on White-Collar Criminal Search Warrant Materials*, 28 Pepp. L. Rev. 317, 320 (2001) ("The government's practice of routinely seeking to execute and seal search warrants is a recent phenomenon.").  What remedy does a citizen have if the search warrant affidavit is misleading or even constitutes perjury?  In order for the citizen or the public trying to determine whether or not the force utilized was justified, the citizen or public must have some access to the warrant materials.[11]  The approach the Government suggests here is that the court "stay out of it" once the warrant issues.

In this case, the Government's representatives—the AUSA and an IRS Special Agent ("SA")—told Smith's attorney's that Smith was on videotape destroying evidence.  This turned

---

[11] In *Search of 14416 Coral Gables Way*, 946 F. Supp. 2d 414, the court recognized how problematic this issue can be for the warrant target:

> Mr. Gurpreet Kohli apparently has lost his job of many years.  The residence of the Kohlis has been subject to a sweeping search, including seizure of computers and cell phones, and broad categories of documents.  The courts recognize that the subjects of a warrant have a right to know the basis for such an invasion of privacy that may only be abridged on demonstration of compelling interests.  The government has not made that demonstration.  The government is to produce the redacted affidavit.

*Id.* at 428-29.

out to be a total fabrication.  The Government since backtracked and conceded to Smith's attorneys that there is no video showing destruction of evidence.  It is now undisputed that the representation of IRS SA Cory L'Heureux ("SA L'Heureux") to Smith's attorneys that evidence was captured on videotape of Smith destroying records was not true.  Rather, the Government later claimed to Smith's attorneys and now claims in its appeal to have proof of "attempting to remove or destroy" evidence (Gov't's Appeal, 3).  SA L'Heureux explained to the undersigned attorneys that the so-called "obstruction" is evidence that the citizen ostensibly moved his property from one place to another, the new location being a storage unit rented under Smith's name, the location of one of the three executed warrants.  The Government has now recovered these documents in full, as Magistrate Judge Palermo observed.   (Doc. 26, 9-10 ("The Government has failed to even suggest, let alone show, that other information exists that the Government has yet to collect that would be destroyed.").)   Was this fabrication about "obstruction" stated in sworn testimony that supported one or more of the search warrant affidavits?

Notwithstanding its admission that there was never evidence of destruction of documents, the Government continues to make the baseless assertion that Smith is guilty of obstruction.  (*See* Gov't's Appeal, 3.)  Magistrate Judge Palermo rejected the Government's accusation, noting that "Smith firmly denies this allegation" (Doc. 26, 9), and concluding that "[t]he Government has certainly failed to demonstrate" how granting Smith access to redacted affidavits would enable obstruction or interference (*id.*).  The warrants have been executed.  The Government has over 80 boxes of documents, computers, cell phones, and other electronic equipment.  There is no other information that can be collected.

In arguing that the Fourth Amendment does not support access to a search warrant affidavit, the Government tries to suggest that the Fifth Circuit has ruled on the issue, when it has not.  The Government cites the Fifth Circuit case of *In re Grand Jury Proceedings*, 115 F.3d 1240 (5th Cir. 1997), which in turn cited the Seventh Circuit case of *EyeCare Physicians*, and suggests that the Fifth Circuit chose to "abide by" the Seventh Circuit's decision on this issue. (Gov't's Appeal, 6-7.)   But *Grand Jury Proceedings* is distinguishable because there the appellees failed to avail themselves of the pre-indictment remedy provided by Rule 41, *id.* at 1247, as Smith has done here.  Moreover, a district court in the Fifth Circuit rejected a reading of *Grand Jury Proceedings* as endorsing *EyeCare Physicians* as pointedly as the Government asserts.  In *Al-Dahir v. Northrop Grumman Info. Tech.*, No. CIV.A. 08-563, 2008 WL 4470514 (E.D. La. Sept. 26, 2008), the court concluded that it was "unclear whether the Fifth Circuit's reference to *EyeCare Physicians* was meant to adopt the reasoning in that case as dispositive of the issue presently before this Court"—that is, whether access to a sealed affidavit should be allowed—"or was merely a determination that in light of an extant appellate decision finding that there was no Constitutional right to sealed warrant affidavits, the government's actions were reasonable and thus did not evidence 'callous disregard' of movant's Constitutional rights" *id.*, 2008 WL 4470514, at *5 n.4.  The *Al-Dahir* court then stated that the Fifth Circuit's reference to *EyeCare Physicians* in *Grand Jury Proceedings* as "sensible" was not a reference to the same issue or holding presented, i.e., whether to unseal a search warrant affidavit, "nor did the Circuit engage in much analysis of that decision or the issue presented here." *Id.* at *5.  Therefore, the court decided to "engage[] in its own process of analysis." *Id.*  Likewise, this Court should reject the Government's characterization of *EyeCare Physicians* and affirm Magistrate Judge Palermo's analysis of the competing interests.

Federal Rule of Criminal Procedure 41 directs the judge before whom the warrant is returned to file all papers in connection with the seizure of the property with the clerk of the district court.  Fed. R. Crim. P. 41(*i*).  Early Advisory Committee Notes to Rule 41 make it clear that this Rule was intended to allow persons wishing to challenge a warrant to have access to the supporting affidavit.[12]   In this case, the three search warrant affidavits remain sealed and it is impossible to identify anything but obvious defects in the warrant or its execution.   It is impossible to determine whether probable cause existed to execute the three searches and, if so, for what.

As Magistrate Judge Palermo pointed out in the MRO on pages 4-5, search warrant affidavits are plainly "judicial records" that presumptively fall within the scope of the common law right of access.  *Baltimore Sun*, 886 F.2d at 64.  As Rule 41(*i*) of the Federal Rules states, the magistrate judge to whom the warrant is returned must attach to the warrant a copy of the return, the inventory, and all other related papers, and must deliver them to the clerk in the district where the property was seized.   While Rule 41(*i*) may not create a right of public access, it is consistent with the view that the common law right of access applies to search warrant affidavits during an ongoing investigation (Doc. 15, 5).  A district court in this Circuit explained:

> [Rule 41(*i*)] contemplates that upon the warrant's return all papers in connection with the warrant, including the application or affidavit in support of the warrant, will be made public, and it facilitates observance of existing rights of access by directing the judicial officer to file all papers relating to the search warrant in the clerk's office.

---

[12] Prior to its amendment in 1972, Rule 41 required that the warrant itself state the grounds for issuance, as well as the names of any affiants.  In 1972, this requirement was eliminated because "[a] person who wishes to challenge the validity of a search warrant has access to the affidavits upon which the warrant was issued."  Fed. R. Crim. P. 41(e), "Notes of Advisory Committee on Rules" (1972 Amendment).  *See* James E. Phillips, et al., "Litigating Sealed Search Warrants: *Recent Cases Limit Indefinite Seal in Pre-Indictment Investigations*," The Champion (Mar. 1996), https://www.nacdl.org/CHAMPION/ARTICLES/96mar01.htm.

*United States v. Scully*, No. 10-CR-00593-DAE, 2013 WL 3338593, at *3 (W.D. Tex. July 2, 2013) (internal quotation marks and citation omitted).  The Rule's express reference to "all other related papers" literally encompasses search warrant affidavits and "lends support to the idea that the public has a qualified right of access to search-warrant materials."  *Id.* at *3.  The federal court in *In Re Search of a Residence at 14905 Franklin Drive*, 121 F.R.D. 78, 79 (E.D. Wis. 1988), also concluded that former Rule 41(g)'s requirement that "upon the warrant's return, all papers 'in connection therewith' are to be filed with the clerk" means the papers are to be "made public."  Although neither the cases nor reading of the Federal Rules of Criminal Procedure results in a clearly defined timeline, a look to the earlier advisory notes supports the notion that search warrant affidavits should be made available to determine whether probable cause existed and to make a motion for the return of property.  Moreover, reading the absence of a "deadline" in Rule 41 as meaning that documents may remain sealed indefinitely, as the Government suggests (Gov't's Appeal, 7), is an interpretation that has been squarely rejected by the courts.  *See, e.g.*, *Semtex Indus.*, 876 F. Supp. at 429 (the common law right of access requiring disclosure of search warrant affidavit could not be postponed indefinitely).

Smith acknowledges that a balancing test has to be conducted in order to best serve the target's need to access search warrant affidavit information while allowing the government's investigation to proceed.  Magistrate Judge Palermo properly applied this balancing test, and she properly put the burden on the Government to show its interest outweighs Smith's.  Smith suggested numerous times that the Government's interest in keeping identities of informants confidential can be accommodated by a less-restrictive method than sealing the search warrant affidavit.  Redaction is a common tool used every day in the court system.  In the MO that the

Government now appeals, Magistrate Judge Palermo reached the same conclusion, finding that some redactions were necessary to preserve confidentiality. The Court should affirm.

### III.   26 U.S.C. § 6103 DOES NOT SUPPORT THE GOVERNMENT'S POSITION THAT THE AFFIDAVITS SHOULD REMAIN SEALED TO PROTECT RETURN INFORMATION.

Courts have the inherent authority to unseal judicial records and documents, including search warrant affidavits (Doc. 26, 2). Section 6103 of U.S.C. Title 26 includes exceptions that permit the disclosure of return information in various circumstances (Doc. 26, 3; *see* 26 U.S.C. § 6103(c)-(o)). Section 6103 is not to protect the Government; it is in place to protect Smith.

The Government wants to conceal Smith's tax records and/or the records of the companies he owns from Smith himself,[13] arguing that Smith "stands in the shoes of any member of the general public" (Gov't Appeal, 16). The irony of this argument is that SA L'Heureux has been personally deciding what information to share and what information to disclose when he "interviews" witnesses. He has embarked on a mission to "interview" potential future investors, and has shared with them his misguided conclusion that a pyramid scheme is in place. The Government appears to be using a statute that was passed for the protection of the taxpayer as both a sword and a shield against Smith, as Magistrate Judge Palermo observed (Doc. 26, 6).

Even if the Court finds that Section 6103 allows the Government to continue to seal the search warrant affidavits there is still a balancing test required to be performed.[14] Again, there

---

[13] If the Government seeks to conceal return information of parties unrelated to Smith, it has not so indicated.

[14] Presumably Magistrate Judge Palermo has performed this balancing test. Although Smith has not seen the Government's supplemental brief and the redacted search warrant affidavits remain sealed pending this appeal, it is clear from the conclusions stated in the MO indicate that Smith's interests were balanced against those of the Government, that the Government failed to convince the Magistrate Judge of a compelling governmental interest that required the affidavits to remain fully sealed, but that the Magistrate Judge accepted that some information should remain confidential.

are less intrusive means than keeping the entire affidavits under seal.  The Government can redact the affidavits, or the Court can issue a gag order so that the only parties that can access the tax information are Smith, the Court, and the Government, thereby denying the public access to this limited tax return information that all belongs to Smith or companies he runs.

Furthermore, as Magistrate Judge Palermo noted, the Government, by filing the affidavits in this proceedings, effectively recognized that the public could eventually access the return information in them.  The Government's request that the affidavit be sealed in the first place was based on its ongoing investigation and to prevent others from learning about the warrant prematurely.  (Doc. 26, 5.)  By the nature of the request, the implication was that sealing would be necessary until the search warrant was served.  (*Id.*)  "The Government did not move to seal the affidavits because they contain return information, and the Court did not order sealing on that basis.   Nor has the Government ever claimed that § 6103 *required* the Court to seal the affidavits."  (*Id.*)

## IV.   UNSEALING THE AFFIDAVITS WILL NOT JEOPARDIZE AN ONGOING CRIMINAL INVESTIGATION.

The Government repeats its argument in this Appeal that "[d]isclosure of the search warrant affidavits would reveal to [Smith] the scope, status, and direction of the investigation, and the investigatory techniques being used" (Gov't's Appeal, 24), bolstered by its now-discredited claim that "the United States has obtained evidence that Smith has attempted to conceal and destroy the very evidence that was sought by the search warrants he now wants to unseal" (*id.*).  As discussed above, the AUSA and SA falsely represented to counsel this evidence of Smith supposedly destroying evidence was on videotape.  But SA L'Heureux later admitted that there was never evidence that Smith destroyed or attempted to destroy documents,

and has conceded that there is no video-recorded proof of this bogus claim.  Counsel can only speculate as to the Government's sworn positions in the Affidavits.

There are no other documents for the Government to obtain.  Smith has offered cooperation in finding and turning over any documents the government might lawfully request that might not be privileged.  Counsel has attempted to work with the Government to secure any such materials.  At present it is unknown if the Government is satisfied or not.  Since SA L'Heureux has publically proclaimed the guilt of Smith, one would assume that the Government has the information it requires.  The Government has seized all of the documents relating to Smith's business, having raided his home, office, and storage space.  And it is no secret there is an ongoing investigation and what that investigation is about.

## CONCLUSION

For the foregoing reasons, Smith respectfully requests that this Court adopt and affirm Magistrate Judge Palermo's Memorandum and Order of July 15, 2016, and Memorandum, Recommendation, and Order of May 20, 2016.


Dated: August 11, 2016                          Respectfully submitted,

                                                MICHAEL LOUIS MINNS, P.L.C. d/b/a
                                                MINNS & ARNETT

                                                */s/ Ashley Blair Arnett*
                                                _____
                                                Michael Louis Minns
                                                State Bar No. 14184300
                                                Ashley Blair Arnett
                                                State Bar No. 24064833
                                                9119 S. Gessner, Suite 1
                                                Houston, Texas 77074
                                                Telephone: (713) 777-0772
                                                Telecopy: (713) 777-0453

## CERTIFICATE OF SERVICE

On August 11, 2016 I, Ashley Blair Arnett, attorney for the Justin Smith, filed this motion with the United States District Court District for the Southern District of Texas electronic filing system.  Based on my training and experience with electronic filing in the federal courts, it is my understanding that a copy of this request will be electronically served upon the parties upon its submission to the Court.

*/s/ Ashley Blair Arnett*
Ashley Blair Arnett